30945. SHOTKIN *v.* THE STATE.

DECIDED OCTOBER 2, 1945. REHEARING DENIED OCTOBER 30, 1945.

140

*Bernard Sholkin,* pro se.

*E. E. Andrews,* solicitor-general, *E. A. Stephens, Durwood T. Pye,* contra.

GARDNER, J. ■ (a) After the bill of exceptions had been filed in this court, the plaintiff in error made a motion to amend it by adding thereto, as parties defendant, the six superior court judges who passed the order of September 21, 1944. We know of no law which would authorize the grant of such a motion. These judges were not acting in their individual capacity, but were acting only in their official capacity on behalf of the State of Georgia; therefore this court has no authority to make them parties defendant in their individual capacity or otherwise. This motion is denied.

(b) The State also filed a motion to dismiss the bill of exceptions on the ground that it does not appear therefrom that there is a proper party defendant. We think that this motion is without merit. The bill of exceptions shows on its face that the State of Georgia is the defendant in error. This is sufficient, and the motion to dismiss is denied.

■ We will now discuss the merits of the case before us. When the plaintiff applied for permission to stand the bar examination with a view of being permitted to practice law, he stated in his application that he was of good moral character, which he stood ready to prove to the satisfaction of the court. After having successfully passed the examination, he applied on July 10 for a license to practice law. The Code, § 24-3304 (Ann. Supp.), provides that an applicant for admission to the bar at the time of filing his application shall answer a questionnaire provided him by the clerk of the court. While it does not appear in the record that the defendant signed this questionnaire, there being nothing contrary shown in the record, it is to be presumed as a matter of law that the applicant did his duty and signed the questionnaire, and that he left it with the clerk to be delivered to the

grievance committee appointed by the judges of the superior court of Fulton County. Among the questions in the questionnaire is the following: "Have you ever been indicted or prosecuted for any crime, felony, or misdemeanor in Georgia or in any other jurisdiction? (If so, give court, offense, as well as result.)" The Code, § 24-3305 (Ann. Supp.), provides: "The clerk shall immediately deliver the questionnaires when answered and signed by the applicants to the committee of the bar; and *no one shall be admitted to the bar until the committee shall have made its report to the court as to the moral character and fitness of the applicant,* provided the report is made within 30 days after the questionnaire is referred to the committee, or within such extension of time as the committee may have obtained from the court." (Italics ours.)

Section 24-3306 (Ann. Supp.) provides: "If the committee should disapprove of the admission to the bar of such applicant upon the ground of lack of moral character and fitness, and the applicant should desire to controvert the grounds upon which such report is based, the court will hear evidence and pass upon the same, after reasonable notice to the applicant, and an opportunity to be heard."

It does not appear on what date the clerk of the court transmitted the questionnaire to the grievance committee, but it does appear in the record of this case that on August 14, 1944, the grievance committee filed a report of their findings addressed to the judges of the superior court of Fulton County. In this report, which is a copy of a resolution of the committee, it was found to be the judgment of the committee that the plaintiff's application for admission to the bar should be denied, and "that, if any proceeding has been taken toward admitting him to the bar, the same be revoked and set aside on account of fraud in the application made by the applicant." It does not appear that this report of the Grievance Committee was not filed within thirty days from the date the questionnaire was turned over to the clerk of the court; but, since the record is silent, and there is nothing to the contrary to show that the committee made their report within thirty days from the time they received it from the clerk of the court or that they did not get an extension of time from the judges of the superior court, this court will presume as a matter of law that they did their duty and made the report within the

time required by law. These facts being considered true and being undisputed, and if the Code sections which we have hereinbefore quoted are to be considered as of binding force (and we know of no law to the contrary), then Judge Paul S. Etheridge was without authority of law to order a license issued to the plaintiff to practice law, on July 10, or the very day that the plaintiff filed with the clerk his questionnaire which the rule provided should be forwarded to the grievance committee. And he likewise was without authority to pass the order of August 31, 1944. Both of such orders were void and a nullity. We do not mean to cast any reflections whatsoever on Honorable Paul S. Etheridge, since deceased, for it appears in this record from his order of August 14, 1944, that the applicant well understood at the time, that his character was then being investigated by the grievance committee, and that Judge Paul S. Etheridge did not authorize or direct that the applicant should receive a license to practice law before the report of the grievance committee was in hand. It is further to be inferred from the order of August 14 that it was not the intention of the said judge to grant unconditionally to the plaintiff in error a license to practice law. A proper construction of the order of August 31, 1944, is to the effect that Judge Paul S. Etheridge out of the goodness of his heart opened the door to the plaintiff for a hearing on the question as to whether the plaintiff's character was such as the law requires for the grant of a license to practice law. This is evidenced by the order passed by Judge Etheridge on September 1, continuing the July Term of the superior court, and referring the whole matter to the judges of the superior court as a whole. The judges met in pursuance of the request of Judge Etheridge, he sitting with them, and, during the same term of court at which the plaintiff contends he received an unconditional license to practice law, passed the order of September 21, 1944. It will be noted that this order, in addition to setting aside the orders of Judge Etheridge dated July 10, August 14, and August 31, 1944, further left open to the applicant, should he so desire, the right to apply to the court for a hearing on his application for admission to the bar. In the order of August 14, Judge Etheridge stated, among other things, that the order of July 10 had "been signed with the understanding that the application of Bernard M. Shotkin for license to

practice law in the State of Georgia was under investigation by the grievance committee of the Atlanta bar association appointed by this court, . . the license to practice law having been withheld pending the report of the said grievance committee." It is significant in this connection to read the second division of the order and judgment of the judges as a whole, dated September 21, 1944, wherein it is stated "that any license of Bernard M. Shotkin to practice law in this State that may have been issued and delivered by this court *or any of its officers* be, and the same is, cancelled and revoked." The particular phrase of this provision is, "or any of its officers." We think that it is easily inferable, in considering this phrase in connection with the order of August 14, that some officer of the court other than the judges thereof without authority delivered to the plaintiff the license to practice law. Whether or not we are correct in this reasoning, we feel secure in our opinion that the order authorizing the defendant to receive a license and the issuance of the license thereunder were void and a nullity, having been issued at a time contrary to the provisions of the law. The order, being thus void and a nullity on the face of the record under the Code, § 110-709, may be so held when "it becomes material to the interests of the parties to consider it." In such event no petition, no notice, no service, no hearing, and no order are necessary to set it aside. It may be disregarded. In *Jowers* v. *Kirkpatrick Hardware Co.*, 21 *Ga. App.* 751 (2) (94 S. E. 1044), this court said: "A void judgment 'is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it.' Civil Code (1910), section 5964. 'A *void* judgment is in reality no judgment at all. It is a mere nullity. It is attended by none of the consequences of a valid adjudication, nor is it entitled to the respect accorded to one. It can neither affect, impair, nor create rights. As to the person against whom it professes to be rendered, it binds him in no degree whatever, it has no effect as a lien upon his property, it does not raise an estoppel against him. As to the person in whose favor it professes to be, it places him in no better position than he occupied before; it gives him no new right, but an attempt to enforce it will place him in peril. As to third persons, it can neither be a source of title nor an impediment in the way of enforcing their claims. It is not neces-

sary to take any steps to have it reversed, vacated, or set aside. But whenever it is brought up against the party, he may assail its pretensions and show its worthlessness. It is supported by no presumptions, and may be impeached in any action, direct or collateral.' Black on Judgments, section 170." See *Carter* v. *Atkinson*, 12 *Ga. App.* 390 (3) (77 S. E. 370) ; *Walker* v. *Ful-Kalb Inc.*, 181 *Ga.* 563, 573 (183 S. E. 776) ; *Jones* v. *Jones*, 181 *Ga.* 747 (184 S. E. 271).

From another view which is easily inferable from this record, the orders and judgments granting to the plaintiff the right to practice law and the procuring of a license thereunder are tainted with fraud. In *Crawford* v. *Williams*, 149 *Ga.* 126, 132 (99 S. E. 378), the Supreme Court, quoting from *Smith* v. *Cuyler*, 78 *Ga.* 654, 660 (3 S. E. 406), said: "Fraud is not a thing that can stand, even when robed in a judgment." From this situation it follows that the plaintiff had never legally been authorized to practice law, and there was no necessity to bring a disbarment proceeding. He stands now where he stood when he made his application for a license—that is, to show to the court that he has the character which the law requires of one to become a practitioner at the bar. Surely the plaintiff has not been harmed. The doors of entrance to the bar of Georgia are still open to him, and if he can measure up to the requirements he will be admitted. He should not desire to refrain from this under the cloud with which the inferences of this record envelop him.

The court did not err in sustaining the demurrer for any of the reasons assigned.

*Judgment affirmed.* *Broyles, C. J., and MacIntyre, J., concur.*